This contract appears to me to be founded on a consideration perfectly just in itself, and reconcilable, on a correct view of the authorities, and with the most authentic exposition of positive law. The proper definition of maintenance entirely excludes this case from all participation in its criminality; it signifies a malicious or, at least, an officious interference in a pursuit of which the party has no interest to assist, either with money or advice, to prosecute or defend the action. 4 Bl. Com., 134.
The common-law maxim is that nothing in action, entry or reentry, can be granted; the reason assigned is for the avoiding of maintenance, supporting of rights, and stirring up of suits; for so, under color thereof, pretended titles might be granted to great men whereby right might be trodden down. Co. Litt., 214. Now although nothing passed by this deed so as to enable this defendant to recover in his own name against the tenant in possession, yet it passed such an equitable title that, in the event of a recovery, a court of equity would have completed his title by decreeing a deed. The policy of the common law (89) forbade that a tenant should alien his fee or tenure without the consent of the lord, or that the lord should alien his seignory without the consent or attornment of his tenant. A feoffment was void without livery of seisin, and possession was necessary to enable a man to make livery of seisin. But if the deed were even an act of maintenance, yet as between the parties to it it was effectual. Nichols could not recover the land, in opposition to his deed to Bunting, for, as an alienor, it is an estoppel; for it seems to be thought that a feoffment upon maintenance, or champerty, is good as between the feoffer and feoffee, and is only void against him who hath right. Co. Litt., 369a; Cro. Eliza., 445.
The strict doctrine of the common law in regard to maintenance would be fraught with inconvenience if applied in all its rigor to the existing circumstances of this State. Here a considerable portion of the land remains, in a great degree, uncultivated and in many instances remote from the observation of the owner. Partial settlements may be made upon it, and possession held, the precise extent of which may be unknown to the owner and difficult to ascertain, from ignorance of the claim of the adverse tenant or the uncertainty of the boundaries. If, believing himself to be in the constructive possession (a term well understood), he sells his land, and the purchaser cannot recover the land from *Page 50 
the person in possession, nor his purchase money from the vendor, on account of the illegality of the contract, very great injustice will be the effect. In England the lands are all actually possessed either by the owner himself or by some one under his authority; and it can scarcely happen there that a man can ignorantly sell land of which another is in the adverse possession. Yet even there the law is much relaxed (90) from its ancient strictness, and the old rule, that for avoiding maintenance a chose in action cannot be assigned or granted over to another, is so diluted by exceptions as to amount only to this, that the grantee or assignee of a deed or bond cannot sue in his own name. But he may sue in the name of the assignor or grantor, and the court of law will consider the assignment of an apprentice, or an assignment of a bond, as things which are good between the parties, and as contracts which the law will recognize. But what comes nearer to the present case is that the assignment of a chose in action is a good consideration of a promise; and if, instead of a bond, the defendant in this case had promised to pay the money in the event of a recovery being had against Blount, he would have been bound by such promise. Sid., 212; 2 Bl. Rep., 820. So an assumpsit, in consideration of a conveyance to A. as he shall appoint, of all the lands called B., though it be said that the plaintiffs had nothing in the tenements (2 Lev., 33), and in consideration of the release of an equity of redemption. Ld. Ray., 662.
In this case the consideration was the transfer of a right to the defendant which, by the subsequent sanction of the law, he was enabled to enjoy, and which it was not in the power of the plaintiffs to deprive him of under any circumstances. It is difficult to conceive what would form a consideration for a promise if this would not.
But, independently of any other view of the case, an adverse possession ought not to be presumed, but a holding over and claiming possession against the owner ought to be proved. The sheriff, having conveyed all the title of Blount to Nichols, who thereby became tenant in fee, it is possible that the possession also would have been surrendered if demanded; at least, the contrary does not appear. In such a case Blount must be considered as tenant at will to Nichols, whose (91) alienation of the land is not the transfer of a mere right, but amounts to the determination of the estate at will 2 Bl. Com., 146; 1 Johns., 45.
There must be a new trial.
Cited: Morgan v. Bradley, post, 560. *Page 51